IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| JOHN BROOKS,<br><br>*Plaintiff*,<br><br>v.<br><br>THE KNAPHEIDE MANUFACTURING CO., DEALERS TRUCK EQUIPMENT CO. LLC, JOHN DOE 1, and JOHN DOE 2,<br><br>*Defendants*. | § § § § § § § § § § § § § CIVIL CASE NO. 5:22-CV-00115-JRG |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Dealers Truck Equipment Co.'s ("Dealers") Motion for Summary Judgment (the "Motion"). (Dkt. No. 43.) In the Motion, Dealers moves for summary judgment on all of Plaintiff John Brooks' ("Plaintiff") claims asserted in the Complaint. Having considered the Motion, the subsequent briefing, and for the reasons set forth herein, the Court finds that the Motion should be **GRANTED-IN-PART** and **DENIED-IN-PART**.

**I.    BACKGROUND**

This action arises from a personal injury that occurred in 2020. (Dkt. No. 1, ¶¶ 8–10.) At the time of the incident, Plaintiff was employed as a mechanic by Pratt's Truck Service, Inc. ("Pratt's"), a wrecker service in Bowie County, Texas. (Dkt. No. 48, ¶¶ 9–10.) On September 12, 2020, Plaintiff was stopped at a traffic signal when an explosion occurred inside the covered bed of his work vehicle, a Ford F-350 service truck with a covered service body (the "covered bed") installed immediately behind the cab of the truck. (*Id.*, ¶¶ 29–31.) The explosion caused severe bodily injuries to Plaintiff. (*Id.*, ¶¶ 33–34.) Plaintiff brought this lawsuit against Dealers, Knapheide Manufacturing Co. ("Knapheide"), John Doe 1, and John Doe 2 on September 9, 2022.

(*Id.*) Plaintiff alleges strict products liability, negligent products liability, breach of implied warranty, and negligence.[1] (*See* Dkt. No. 61 at 3, citing Dkt. No. 1.) On January 26, 2023, Pratt's Truck Service ("Pratt's") was designated as a Responsible Third Party. (Dkt. No. 25.)

Plaintiff alleges that in or near September of 2018, Pratt's and its employees (including the Plaintiff) contacted McLarty Ford in Texarkana to purchase a work truck. (*Id.*, ¶ 14.) Plaintiff and Pratt's required a covered bed installed on the work truck. (*Id.*, ¶ 16.) Plaintiff contends that Plaintiff conveyed to McLarty Ford a need for the covered bed to be ventilated. (Dkt. No. 61 at 2.) Specifically, the Amended Complaint alleges:

> At the time of purchase, Plaintiff, the owner of Pratt's, and an additional employee relayed to McLarty Ford via a handwritten note the specifications of the covered bed that would be needed to accommodate Plaintiff's work requirements, which would include storing and transporting all of Plaintiff's tools and equipment, including gas-powered tools.

(Dkt. No. 48, ¶ 17.) Dealers disputes that any such need or specification was conveyed to it from either McLarty Ford, Knapheide, or Plaintiff and/or Pratt's. (Dkt. No. 43 at 4.) Dealers purchased the covered bed from Knapheide. (Dkt. No. 61 at 2; *see also* Dkt. No. 43-6.) Knapheide designed, manufactured, and sold the covered truck bed in question. (*See* Dkt. No. 61 at 2; *see also* Dkt. No. 43 at 3.) This is not in question. The covered bed was then installed on Plaintiff's work truck by Dealers. (Dkt. No. 61 at 2.)

Plaintiff later had mechanical issues with the work truck itself, unrelated to the covered bed. (Dkt. No. 61 at 2.) In April 2019, Plaintiff subsequently engaged Dealers to remove the covered bed from the original work truck, and to reinstall the same covered bed on a new and different work truck. (*See* Dkt. No. 48, ¶¶ 24–26.) At this time, Plaintiff's and/or Pratt's gas-

---

[1] Plaintiff asserts that its Complaint states a cause of action for gross negligence, but only cites generally to the Complaint for support. (Dkt. No. 61 at 3.) He argues in the briefing that the Complaint makes out a negligence claim, without reference to "gross negligence" and without accompanying gross negligence language. (*See id.* at 7–8.) The Court finds that Plaintiff has alleged simple negligence but not gross negligence, as discussed *infra*.

2

powered compressor was inside the covered bed of the original work truck. (Dkt. No. 61 at 2.) While Plaintiff indicates he played some role in installing a gas-powered air compressor in the covered bed of the second work truck, what role he played is unclear. (*See* Dkt. No. 43 at 3; *see also* Dkt. No. 43-4.) Plaintiff alleges that the explosion and harm resulted from a lack of ventilation in the covered bed of the second service truck. (Dkt. No. 48, ¶ 32.) Dealers filed the instant Motion on September 13, 2023, asserting that Plaintiff's claims should be disposed of on summary judgment. (*See* Dkt. No. 43.)

## II.   LEGAL STANDARD

To prevail on a motion for summary judgment, a moving party must establish that the pleadings, the discovery and disclosure materials produced in the case, and any affidavits "[show] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). The substantive law of the case determines what facts qualify as material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is one that is relevant or necessary to the ultimate conclusion of the case. *Id.* Under the governing substantive law, disputes over facts that could affect the outcome of the lawsuit preclude granting a motion for summary judgment. *Id.* An issue is genuine if the evidence is sufficient for a reasonably jury to return a verdict for the nonmoving party. *Id.* at 255-56. The trial court must resolve all reasonable doubts in favor of the non-moving party. *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted).

The moving party carries the initial burden of demonstrating to the Court the basis for the summary judgment motion by identifying specific portions of the pleadings, depositions, discovery materials, or affidavits that show an absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Should the party moving for summary judgment carry

its burden, the non-movant must then provide the Court with specific facts and affirmative evidence showing a genuine issue for trial. *Anderson*, 477 U.S. at 257. Summary judgment is appropriate only if, drawing all reasonable inferences and resolving all doubts in favor of the nonmoving party, the evidence is so one-sided that no reasonably jury could return a verdict for the nonmoving party and the movant must prevail as a matter of law. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007); *see also Anderson*, 477 U.S. at 251-52.

## III. DISCUSSION

Dealers presents two main arguments in support of its Motion. First, it argues that it is an innocent seller exempt from products liability under Chapter 82 of the Texas Civil Practice & Remedies Code ("TCPRC"). (Dkt. No. 43 at 5–7.) Second, Dealers argues that even if it is not an innocent seller, Plaintiff has failed to raise a genuine issue of material fact on each of his claims. (*Id.* at 5–8.)

### A. Chapter 82 of the Texas Civil Practice & Remedies Code Does Not Foreclose Liability Against Dealers

#### i. Texas Products Liability Law Under Chapter 82

Texas law forbids a plaintiff from maintaining a recovery against a "seller that did not manufacture a product" in a "products liability action" absent certain acts of independent wrongdoing on the part of such seller. TCPRC § 82.003. Specifically, Chapter 82 defines "seller" as "a person who is engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component part thereof." TCPRC § 82.001(3). Additionally, Chapter 82 defines "products liability action" as:

> [A]ny action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability,

4

> negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories.

TCPRC 82.001(2). Further, "Texas courts are clear that this definition is to be applied broadly." *See*, *e.g.*, *Moncibaiz v. Pfizer Inc.*, 532 F. Supp. 3d 452, 458 (S.D. Tex. 2021); *Fresh Coat, Inc. v. K-2, Inc.*, 318 S.W.3d 893, 900 (Tex. 2010). Even if a defendant is a non-manufacturing seller and plaintiff's claims are "products liability action[s]" within the meaning of Chapter 82, a plaintiff may still prevail upon showing that the defendant falls into one or more of the seven exceptions to the innocent seller rule. *See* TCPRC § 82.003(a)(1)–(a)(7).

In their briefing, however, the parties do not discuss whether Dealers is a "seller" within the meaning of Chapter 82. Rather, the briefing focuses on whether Dealers is an *innocent* seller who would be immune from liability and whether any of the exceptions to the innocent seller rule apply. (*See* Dkt. No. 43 at 5–7.) In the Court's view, the briefing overlooks an important step—discussion of whether Dealers is or is not a *seller* under the statute is required. Importantly, the Court notes that two separate and distinct transactions took place between Plaintiff/Pratt's and Dealers. In the first transaction during September of 2018, Dealers purchased the covered bed from Knapheide and then installed it on the first work truck ("Transaction One"). (*See* Dkt. No. 48, ¶ 21; *see also* Dkt. No. 43-6.) In the second transaction during April of 2019, Dealers removed the covered truck bed from the first work truck and reinstalled it on the second work truck ("Transaction Two"). (Dkt. No. 48, ¶ 26.) The Court analyzes whether Dealers was a "seller" within the meaning of Chapter 82 for each transaction.

### ii. Dealers Is a "Seller" in Transaction One, But Not in Transaction Two

The Texas Supreme Court has held that "when a product-related injury arises from a transaction involving a sale, sellers are those who have relinquished title to the allegedly defective product at some point in the chain of distribution." *McMillan v. Amazon.com, Inc.*, 625 S.W.3d

5

101, 111 (Tex. 2021.) This means that under Texas law, a seller generally must have made the ultimate sale to a plaintiff or relinquished title at some point upstream in the distribution chain.[2] *See id.* at 111–12. The Texas Supreme Court has made clear that "[i]n cases where an ordinary sale occurs, a sales analysis—transfer of title for a price—is used to identify which person or entity qualifies as a seller of the product." *Id.* at 111. Further, the "performance of services does not in itself preclude seller status" where a defendant provides both goods and services. *Id.* at 107. However, a defendant is not a seller "if the provision of products is incidental to the provision of services." *Id.*, citing *Centerpoint Builders GP, LLC v. Trussway, Ltd.*, 496 S.W.3d 33, 40 (Tex. 2016).

### a. Transaction One

In September 2018, Plaintiff and Pratt's contacted McLarty Ford to purchase the first work truck. (Dkt. No. 48, ¶ 14.) McLarty Ford then contacted Dealers who contacted Knapheide to purchase the covered bed. (*Id.*, ¶ 18.) Dealers purchased the covered truck bed from Knapheide (Dkt. No. 43-6) and sold it McLarty Ford (Dkt. No. 43-8), obtaining and then passing title. In Transaction One, Dealers performed services *and* sold goods. No one argues that the sale of the covered bed in Transaction One was merely "incidental" to the services provided such that Dealers was not a "seller" under the meaning of Chapter 82 in Transaction One.[3] Indeed, as noted above, Dealers seems to embrace its status as a seller in Transaction One by arguing it is "precisely the kind of innocent seller" that Chapter 82 was meant to protect. (Dkt. No. 43 at 7.) Since Dealers has not attempted to establish that product sale was merely "incidental" to the provision of services

---

[2] In "non-sale commercial transactions" such as where a plaintiff receives a product through a lease or as a promotional sale, the passing of title is not required—"entities that retain title to but share the use of defective products as part of a commercial transaction…can be sellers." *McMillan*, 625 S.W.3d 101, 107. The non-commercial transaction exception does not apply in this instance, nor does any party argue it does.

[3] Further, Dealers' invoice to McLarty Ford for the covered bed and installation and cosmetic services provides insight. That invoice demonstrates that the amount paid for the equipment exceeded that paid for their services. (*See* Dkt. No. 43-8.)

(i.e., the installation for the covered bed) in Transaction One, Dealers qualifies as a "seller" under Chapter 82 for that transaction.

### b. Transaction Two

After Dealers installed the covered truck bed on the first work truck of Plaintiff/Pratt's and that transaction was complete, that vehicle had mechanical problems leading Dealers to decide work truck number one needed to be replaced. (Dkt. No. 48, ¶ 25.) On April 23, 2019, at the request of Pratt's, Dealers removed the same covered bed from the original work truck and reinstalled it on an altogether new and different work truck. (*Id.*, ¶ 26.) At that time, Pratt's held title to the covered bed and Dealers provided only services. Nowhere is there an attempt to show that the alleged defective product was sold to Plaintiff/Pratt's as part of Transaction Two in April 2019. In the Court's view, Dealers was not a "seller" within the meaning of Chapter 82 regarding claims that relate to Transaction Two. This was not a mixed goods and services transaction—Dealers only performed services on a truck and covered bed, the title to which was then vested in Pratt's. Dealers was therefore not a "seller" regarding Transaction Two. Consequently, Dealers is not liable for any "products liability action" based on or arising from Transaction Two—i.e., its installation of the covered bed onto the second truck. However, Dealers may be liable for simple negligence arising from Transaction Two, as discussed below.

### iii. Dealers Is Not Exempt From Liability As a Matter of Law By Virtue of the Innocent Seller Rule

Since Dealers is a "seller" with respect to Transaction One, Dealers may be subject to products liability as a non-manufacturing seller under Chapter 82 if it falls into one of seven exceptions to the innocent seller rule. *See* TCPRC § 82.003(a)(1)–(a)(7). Dealers' argument is as follows: Dealers is a non-manufacturing seller; each of Plaintiff's asserted claims are "products liability action[s]" within the meaning of Chapter 82; and Dealers does not fall within any

7

exception to the innocent seller rule. (Dkt. No. 43 at 6–7.) Dealers concludes it is completely exempt from products liability as a non-manufacturing seller that does not fall within an exception to Chapter 82's innocent seller provision. (*Id.*) The Court disagrees.

### a. Plaintiff Alleges Theories of Products Liability Under Chapter 82 *and* Simple Negligence

First, Dealers attempts to establish that all of Plaintiff's allegations against Dealers in the Complaint constitute "products liability action[s]" within the meaning of the TCPRC. (*See* Dkt. No. 43 at 6; *see also* Dkt. No. 48 at 8–9.) The Complaint alleges that the covered truck bed was "defective in its design, manufacture, and/or installation" and that, "specifically, the bed was not properly ventilated and lacked warnings about the risks and dangers posed to operators by the lack of ventilation." (Dkt. No. 48 at 8.) Further, Plaintiff alleged that Dealers had a "duty to exercise reasonable care in the design, manufacture, testing, sale, labeling, installation, and/or distribution of the covered bed . . . including a duty to ensure it did not cause unreasonable or unnecessary injury." (*Id.* at 9.) Dealers argues that, taken together, these claims clearly fall within the broad definition of "products liability action" found in Chapter 82. (Dkt. No. 43 at 6; *see also supra*, Section III.A.i.)

Dealers' argument is that Plaintiff does not have a claim for negligence outside of the "products liability" context, and this would mean that Plaintiff would have to prove a product defect within the meaning of Chapter 82, imposing a higher threshold for liability to establish its claims against Dealers. Common to design, manufacturing, and marketing defect "products liability action[s]" is the requirement that the Plaintiff prove that "the product was in a defective or unreasonably dangerous condition[.]" *See, e.g.*, *Smith v. Robin America, Inc.*, 773 F.Supp.2d 708, 713–14 (S.D. Tex. 2011); *Ranger Conveying & Supply Co. v. Davis*, 254 S.W.3d 471, 478 (Tex. App.–Houston [1st Dist.] 2007, pet. denied).

8

Dealers argues that any language that could be construed as a claim for simple negligence arises from the allegedly defective covered bed or allegedly defective warnings, such that all of Plaintiff's claims fall within the ambit of a "products liability action." (*See* Dkt. No. 43 at 6 ("Any claim that in substance alleges injury due to a product failure is subject to the statutory presumption and bar supplied by Chapter 82.").) Plaintiff responds that in addition to products liability claims subject to Chapter 82, it asserted a negligence cause of action that falls outside the scope of product liability. (*See* Dkt. No. 61 at 7–8.) Plaintiff points to language in the Complaint where it alleged that "Dealers had a duty to exercise reasonable care in the…installation…of the covered bed" and "a duty to ensure that the covered bed did not cause unreasonable or unnecessary injury." (*Id.* at 7, citing Dkt. No. 48 at 9.) The Complaint further alleges that Dealers breached such duties when it "(1) did not use due care in installing the covered bed to have proper ventilation…and (5) failed to properly install the covered bed onto the vehicle." (*Id.*, citing Dkt. No. 48 at 9.) These allegations, argues Plaintiff, do not rely on the covered bed being defective, but rather focus on Dealers' duties with regard to the *installation* of the covered bed. (*Id.* at 8.)

"Texas courts have explained that where 'the allegations and evidence are directed to whether the product is unreasonably dangerous and no other potentially negligent conduct is alleged or the subject of evidence,' the negligence theories are subsumed by the strict liability theories asserted."[4] *Romo v. Ford Motor Co.*, 798 F.Supp.2d 798, 807–08 (S.D. Tex. 2011) (quoting *Kallassy v. Cirrus Design Corp.*, 2006 WL 1489248, at *4 (N.D. Tex. May 30, 2006) (internal citations omitted)). However, this is where the distinction between Transaction One and Transaction Two, within the facts of this case, has practical effect.

---

[4] Common to design defect, manufacturing defect, and marketing defect claims is the requirement that "the product was in a defective or unreasonably dangerous condition[.]" *See*, *e.g.*, *Smith v. Robin America, Inc.*, 773 F.Supp.2d 708, 713–14 (S.D. Tex. 2011); *Ranger Conveying & Supply Co. v. Davis*, 254 S.W.3d 471, 478 (Tex. App.–Houston [1st Dist.] 2007, pet. denied).

9

As an initial matter, the language in the Complaint pointed to by Plaintiff is not specifically tied to one transaction or the other—the negligence cause of action appears to be alleged as to both transactions. To the extent that Plaintiff has alleged a simple negligence cause of action against Dealers with respect to Transaction One—Dealers' acquisition and installation of the covered bed onto the first work truck—any negligence theory is subsumed by the product liability theories it asserted as to Transaction One. *See Romo*, 798 F.Supp.2d at 807–08. Despite Plaintiff's assertions, the Court is not persuaded that Plaintiff's negligence theory as to Transaction One is separate and distinct from his products liability claims.[5] (*See* Dkt. No. 61 at 8.)

However, Dealers cannot be liable on products liability theories arising from Transaction Two because it was *not a seller* in that scenario. In other words, Dealers' non-seller status exempts it from products liability regarding the April 2019 removal and reinstallation of the covered bed (then owned by Pratt's) because it performed only a service. However, Plaintiff's negligence cause of action survives as applied to Dealers' actions during Transaction Two. While not liable as a seller, Dealers installed a covered bed onto a truck and it had a duty to exercise reasonable care in that installation.[6] Said another way, Dealers performed a service for Plaintiff in Transaction Two, and it had a duty to act with reasonable care such that there was no unreasonable risk of harm to the Plaintiff arising from the performance of its services. In the Court's view, the duty of a service provider is different from that of a seller of a product. Since there is no products liability action as to Transaction Two, the negligence cause of action cannot be subsumed, and it survives.

---

[5] This is especially true because one of the Chapter 82 exceptions that Plaintiff argues is applicable to Dealers (discussed *infra*) is based on the seller's installation of the defective product. *See* TCPRC § 82.003(a)(3) ("(a) A seller that did not manufacture a product is not liable for harm caused to the claimant by that product unless …(3)…the seller installed the product,…on another product and the claimant's harm resulted from the product's installation on to the assembled product.")

[6] Dealers does not dispute in its Motion that it had a duty to act with reasonable care in the installation of the covered bed; it only protests that the negligence cause of action falls under Chapter 82.

10

In sum, the Court finds that Plaintiff's simple negligence claim as to the installation of the covered bed on the first truck is subsumed by its products liability claims. However, because Dealers was not a "seller" within the meaning of Chapter 82 when it reinstalled the covered bed on the second truck in April 2019, Plaintiff can only properly pursue negligence against Dealers for its actions at that time.

> **b. Plaintiff Raises a Genuine Issue of Material Fact as to Whether Dealers Falls Into an Exception to the Innocent Seller Rule With Regard to Transaction One**

A non-manufacturing seller may only be liable for a products liability action if a specific statutory exception applies. *See* TCPRC § 82.003(a)(1)–(a)(7); *see also Martinez v. Medical Depot, Inc.*, 434 F.Supp.3d 537, 548 (S.D.Tex.2020) ("[I]f plaintiff proves that any one of the seven exceptions individually applies to defendants, that defendant may be held liable under [Chapter 82] and cannot avail itself of the 'innocent seller' defense.") Whether a seller is immune from liability based on the innocent seller provision is a fact question for the jury. *See In re DePuy Orthopaedics Inc., Pinnacle Hip Implant Product Liability Litigation*, 888 F.3d 753, 782–83 (5th Cir. 2018).

In this case, Plaintiff argues that Dealers falls into four exceptions preventing it from obtaining immunity from a products liability action under the innocent seller rule:

> (a) A seller that did not manufacture a product is not liable for harm caused to the claimant by that product unless the claimant proves:
> > (3) that the seller installed the product, or had the product installed, on another product and the claimant's harm resulted from the product's installation on to the assembled product; [or]
> > (4) that:
> > > (A) the seller exercised substantial control over the content of a warning or instruction that accompanied the product;
> > > (B) the warning or instruction was inadequate; and
> > > (C) the claimant's harm resulted from the inadequacy of the warning or instruction; [or]
> > (5) that:

11

> > (A) the seller made an express factual representation about an aspect of the product;
> > (B) the representation was incorrect;
> > (C) the claimant relied on the representation in obtaining or using the product; and
> > (D) if the aspect of the product had been as represented, the claimant would not have been harmed by the product or would not have suffered the same degree of harm; [or]
> > (6) that:
> > (A) the seller actually knew of a defect to the product at the time the seller supplied the product; and
> > (B) the claimant's harm resulted from the defect[.]

(Dkt. No. 61 at 5–6, quoting TCPRC § 82.003 (a)(3), (4), (5), (6).)

Dealers summarily dismisses the notion that it falls within an exception to the innocent seller provision. (*See* Dkt. No. 43 at 7.) Notably, Dealers overtly fails to address the substance of the exceptions. It even fails to *cite* to the exceptions.[7] Dealers then concludes—with no accompanying analysis—that "no exceptions to Chapter 82's immunity for sellers will apply." (*Id.* at 7.) In the Court's view, this is a clear failure on the part of Dealers to meet its obligations as movant on its Motion. In light of Dealers' failures, the Court need not delve into Plaintiff's analysis and evidence demonstrating why there is a genuine issue of material fact as to whether Dealers falls into any of the above exceptions.

That said, the Court does address Plaintiff's contention that Dealers falls within TCPRC § 82.003(a)(4) because, as discussed *infra*, the Court finds that Plaintiff has failed to demonstrate that there is a genuine issue of material fact as to its marketing defect claim. To support its argument that Dealers falls into this exception of the innocent seller rule, Plaintiff only argues that Dealers "proceeded to install the covered bed…without any warnings from themselves about the

---

[7] The Court is indeed surprised that Dealers might think that its argument and authority on this point are sufficient to meet its burden as movant. Dealers simply states "[f]or someone other than the manufacturer of a product to be liable, a specific statutory exception must apply[]" and cites to a single case. (Dkt. No. 43 at 6, 6 n.18.) Dealers does not address a single exception that Plaintiff alleges applies, nor does it file a reply brief. Dealers' effort on this point falls far short of what should have been presented here.

danger[.]" (Dkt. No. 61 at 7.) Plaintiff fails to argue or provide evidence that Dealers had *any* control (much less substantial control) over the content of the warnings accompanying the covered bed. (*See id.*) Plaintiff fails to contradict Dealers' assertion and accompanying evidence that the covered bed contained several unobstructed and affixed warning labels supplied by Knapheide prohibiting the storage of flammable materials and warning against the danger of electrical switches. (*See* Dkt. No. 43 at 3, 7.) For these reasons, the Court finds that Dealers does not fall under the exception provided in § 82.003(a)(4) as a matter of law.

### B. Plaintiff Has Raised a Genuine Issue of Material Fact on All of His Claims Except the Marketing Defect Claim

Dealers argues that even if Plaintiff's claims survive the innocent seller defense, his claims must fail as a matter of law based on a lack of evidence. However, Dealers fails to specify which precise causes of action fail because an identified element is unproven. In fact, Dealers largely fails to provide substantive law identifying the elements of the asserted legal theories themselves. This lack of effort by Dealers does it no favors. In light of Plaintiff's four products liability theories: breach of implied warranty, manufacturing defect, design defect, and marketing defect, it rests squarely on Dealers to show specifically which elements from which theories are unsupported. Dealers fails to do so. (*See* Dkt. No. 43 at 9–10.) Since this is a dispositive motion, the Court has nevertheless undertaken to parse through Dealers' challenges to each Plaintiff's claims. Having done so, the Court finds that Plaintiff demonstrates genuine issues of fact for its breach of implied warranty, manufacturing defect, and design defect claims. However, the Court finds that there is no genuine issue of material fact on the marketing defect claim, and this claim under products liability fails as a matter of law.

### i. There Is a Genuine Issue of Material Fact on Plaintiff's Breach of Implied Warranty of Merchantability Claim

To prove a breach of implied warranty of merchantability claim ("BIW claim"), Texas law requires that the plaintiff provide proof of a defect. *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 444 (Tex. 1989). However, a defect in a BIW claim is defined differently from a defect in a strict products liability case. *Id.* In a BIW case, a defect is a "condition of the goods that renders them unfit for the ordinary purposes for which they are used because of a lack of something necessary for adequacy." *Id*. In a strict products liability action, however, "the word 'defect' means a condition of the product that renders it unreasonably dangerous." *Id.* A plaintiff alleging a BIW claim has the burden of proving that the goods were defective at the time they left the seller's possession, and that they were unfit for the ordinary purposes for which they are used because of the defect. *Id.*

First, Dealers attempts to argue that the BIW claim here is really rooted in strict products liability and thus, Plaintiff "cannot escape the prohibition of Chapter 82 merely by recasting his claims under breach of implied warranty." (Dkt. No. 43 at 8.) It then notes that a BIW claim is expressly accounted for in the definition of a "products liability action" under Chapter 82. (*Id.*) Dealers further appears to conflate Plaintiff's strict product liability theories with its BIW claim. Dealers contends that because Plaintiff alleges that "…the covered bed was not safe for the uses for which it was manufactured and/or advertised," he still must prove that the covered bed's defect made the product unreasonably dangerous. (*Id.* at 9.) Dealers is not technically wrong, because Plaintiff must prove that the alleged defect rendered the covered bed unreasonably dangerous to succeed on his strict liability claims—the marketing, manufacturing, and design defect theories. *See*, *e.g.*, *Smith v. Robin America, Inc.*, 773 F.Supp.2d 708, 713–14 (S.D. Tex. 2011). However, Plaintiff does not have to prove that the defect made the product unreasonably dangerous to

succeed on his BIW claim; he must only show that the allegedly defective product was unfit for its ordinary purposes for which they are used because of the defect. *See supra*.

The Court agrees that the BIW claim falls under Chapter 82 as a products liability action, but as described above, Dealers does not escape liability by virtue of the innocent seller provision. In simple terms, the BIW claim is a distinct legal theory that falls under the "product liability action" umbrella of Chapter 82. *See* TCPRC § 82.001(2) ("'Products liability action' means any action against a…seller for recovery of damages arising out of personal injury…allegedly caused by a defective product whether the action is based in…strict products liability,…*breach of* express or *implied warranty*, or any other theory or combination of theories.") (emphasis added). However, a BIW claim is not somehow transformed into a strict products liability theory (manufacturing, marketing, or design defect claim) by virtue of it being a "products liability action."

To the extent that Dealers says Plaintiff has failed to raise a genuine issue of material fact as to the "defect" element of its BIW claim, it is wrong. While Dealers recites that Plaintiff must demonstrate that the goods were unfit for the ordinary purposes for which they are used, it makes no argument that Plaintiff's use was not an "ordinary purpose" of the product. (*See* Dkt. No. 43 at 7–8.) Instead, Dealers argues that "missing ventilation is not a defect" but "an option for Knapheide's product line[.]" (*Id.* at 10.) Plaintiff has testified that he and Pratt's provided specifications (namely, regarding ventilation) to McLarty Ford, who conveyed such specifications to Dealers. (Dkt. No. 61 at 10, citing Dkt. No. 61-3 at 23:22–24:07; 78:16–79:09.) Plaintiff's expert opined that the covered bed at issue was defective. (*Id.*, citing Dkt. No. 61-2, ¶¶ 1, 9.) Plaintiff has demonstrated a genuine issue of material fact as to whether there was a "defect" within the context of a BIW claim, especially in light of the lack of argument from Dealers regarding what the covered bed's "ordinary purpose" is and how that was different from Plaintiff's use.

Lastly, "in regard to Plaintiff's [BIW claim]," Dealers argues that Plaintiff possesses no evidence "showing that the covered bed was not tested or that Knapheide's product testing was somehow inadequate" or any "evidence to connect an alleged lack of testing to a product failure." (*Id.* at 10.) However, Dealers fails to cite to any authority that even discusses product testing in the BIW claim context, much less authority holding that such "missing" evidence is required to establish a BIW Claim. (*See id.* at 7–9, 10.) Summary judgment is not proper here.

### ii. There Is a Genuine Issue of Material Fact on Plaintiff's Manufacturing Defect Claim

"A manufacturing defect exists 'when a product deviates, in its construction or quality, from the specifications or planned output in a manner that renders it unreasonably dangerous.'" *BIC Pen Corp. v. Carter*, 346 S.W.3d 533, 540 (Tex. 2011) (internal citations omitted).

Dealers' first argument asserts that Plaintiff "cannot present evidence showing that Dealers…manufactured the covered bed" or "participated in the…manufacturing process" because it is undisputed that Knapheide was the manufacturer. (Dkt. No. 43 at 9.) This argument misses the mark. As the Court addressed above, Dealers is a seller for Transaction One that plausibly falls into multiple exceptions to the innocent seller defense. Therefore, Dealers may still be proven liable for a manufacturing defect claim in its role as a non-manufacturing seller by virtue of one of those statutory exceptions.

Next, Dealers argues that Plaintiff cannot prove that the covered bed was actually defective, and that Plaintiff's expert "failed to provide evidence regarding the existence of a manufacturing…defect inherent to the covered bed in question." (*Id.* at 10.) It contends that Plaintiff did not show "what component did not perform as expected in that any expectations of ventilation were not properly communicated and any proper inspection done by [Plaintiff] would result in this discovery." (*Id.*) Again, however, Plaintiff has testified that he and/or Pratt's told

16

McLarty Ford the covered bed required ventilation. (Dkt. No. 61 at 10, citing Dkt. No. 61-3 at 23:22–24:07; 78:16–79:09.) Although Dealers disputes that this specification was communicated to it and points out that there is no physical evidence of such, Plaintiff's testimony raises a fact issue as to a defect. As noted, Plaintiff's expert opined that the equipment at issue was defective. (*Id.*, citing Dkt. No. 61-2, ¶¶ 1, 9.) Plaintiff has demonstrated a genuine issue of material fact that there was a "defect" within the context of a manufacturing defect theory. Summary judgment is not proper here.

### iii. There Is a Genuine Issue of Material Fact on Plaintiff's Design Defect Claim

To recover on a design defect claim, a plaintiff must prove that: (1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect was a producing cause of the injury for which the plaintiff seeks recovery. *Zoch v. Daimler*, 2018 WL 1306659, at *4 (E.D. Tex. Mar. 13, 2018) (internal citations omitted). Determining whether the design is unreasonably dangerous requires balancing the utility of the product against the risk involved in its use, which is typically a jury question unless reasonable minds could not differ on the risk-utility analysis considerations.[8] *Coleman v. Cintas Sales Corp.*, 40 S.W.3d 544, 548 (Tex. App.–San Antonio 2001, pet. denied) (internal citations omitted).

Dealers makes the same arguments as to Plaintiff's design defect claim as it did against the manufacturing defect claim, and its arguments fail for the same reasons. It contends that Plaintiff

---

[8] The risk-utility analysis requires consideration of several factors, including: (1) the utility of the product to the user and to the public as a whole weighed against the gravity and likelihood of injury from its use; (2) the availability of a substitute product which would meet the same need and not be unsafe or unreasonably expensive; (3) the manufacturer's ability to eliminate the unsafe character of the product without seriously impairing its usefulness or significantly increasing its costs; (4) the user's anticipated awareness of the dangers inherent in the product and their avoidability because of the general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions; and (5) the expectations of the ordinary consumer. *Hernandez v. Tokai Corp.*, 2 S.W.3d 251, 256 (Tex. 1999).

cannot present evidence that Dealers designed or participated in the design process because this was solely Knapheide's role. (*See* Dkt. No. 43 at 9.) This argument is directed to whether a non-manufacturing seller can be subject to design defect liability, and Dealers points to no case law or authority showing that the exceptions to the innocent seller rule do not extend to design defect claims. The plain language of § 82.003(a) states that the exceptions apply to non-manufacturing sellers for "harm caused to the claimant by [a] product" where the claimant proves one or more of the exceptions. For example, if Plaintiff proves that Dealers actually knew of a design defect to the covered bed when it sold the covered bed, and that Plaintiff's harm resulted from the design defect, Dealers may be liable for the design defect even though it did not participate in the design process. *See* § 82.003(a)(6).

Dealers asserts Plaintiff cannot prove a defect in the context of the design defect claim. In support of this argument, Dealers simply states that "[Plaintiff's] expert failed to provide evidence regarding the existence of a…design…defect inherent to the covered bed in question. As such, [Plaintiff] cannot identify a product defect and [Plaintiff] cannot prove a product defect." (Dkt. No. 43 at 10.) In response, Plaintiff points to his expert's testimony that the covered bed was defective because of the lack of ventilation in light of the safer alternative design (i.e., a covered bed with ventilation). (*See* Dkt. No. 61 at 9; *see also* Dkt. No. 61-4, ¶¶ 1–10.) Dealers does not explain *how* the lack of ventilation could not be a design defect; it only states that the covered bed without ventilation is not a design defect.[9] (Dkt. No. 43 at 10.) Dealers fails to meet its burden here; Plaintiff's expert's report creates a fact issue as to defective design. Summary judgment here is not proper.

---

[9] Dealers does not mention the risk-utility analysis, nor the "reasonably safer alternative design" requirement of a design defect claim. (*See generally* Dkt. No. 43.)

### iv. There Is No Genuine Issue of Material Fact as to Plaintiff's Marketing Defect Claim

To prevail on a marketing defect claim under Texas law, a plaintiff must prove: (1) a risk of harm that is inherent in the product or that may arise from the intended or reasonably anticipated use of the product; (2) the supplier of the product knows or reasonably should foresee the risk of harm at the time the product is marketed; (3) the product has a marketing defect; (4) the lack of warnings or instructions renders the product unreasonably dangerous to the ultimate user or consumer; and (5) the failure to warn or instruct causes the user's injury. *Painter v. Momentum Energy Corp.*, 271 S.W. 388, 410 (Tex. App.–El Paso 2008, pet. denied) (internal citations omitted). "A marketing defect is proven when the evidence shows that a defendant fails to warn of a product's potential dangers, when warnings are required, and that the lack of adequate warning or instructions renders an otherwise adequate product unreasonably dangerous." *Smith v. Robin America*, 773 F.Supp.2d 708, 714 (S.D. Tex. 2011) (internal citations omitted).

Dealers presents clear evidence that the covered bed contained several unobstructed and affixed warning labels inside of it, stating "[d]o not store flammable materials such as gasoline, acetylene, propane or cleaning fluids in enclosed cargo area of body or side compartments of body. Electrical switches, lights, or electric locks may spark and cause an explosion which could result in death or serious injury." (*See* Dkt. No. 43 at 3; *see also* Dkt. No. 43-2.) Dealers further asserts that it did not change, remove, obscure, or alter these warnings. (Dkt. No. 43 at 7.) Essentially, Dealers argues that there was no failure to adequately warn as required to establish a marketing defect.

In this instance, the Court agrees with Dealers. Plaintiff's only response is that Dealers "proceeded to install the covered bed, knowing that ventilation was needed, without any warnings from themselves about the danger[.]" (Dkt. No. 61 at 7.) Plaintiff does not dispute that there were,

19

in fact, clear written warnings about storing flammable liquids in the covered bed, nor does it dispute that Dealers did not change or obstruct such warnings. It also does not present evidence demonstrating that the affixed warnings were inadequate. As such, Plaintiff does not establish a genuine issue of material fact on an essential element of a marketing defect claim. Accordingly, Plaintiff's marketing defect claim fails as a matter of law. Summary judgment in this instance is appropriate.

### IV. CONCLUSION

Having considered the Motion, the Court finds that it should be and hereby is **GRANTED-IN-PART** and **DENIED-IN-PART**. In summary, Dealers is not immune as a matter of law from products liability by virtue of the innocent seller provision of Chapter 82 for its actions arising from Transaction One. However, it is immune from products liability arising from Transaction Two, because it was not a "seller" in Transaction Two. Plaintiff's negligence cause of action applies only to conduct arising under Transaction Two (Dealers' reinstallation services regarding the second work truck). Further, all of Plaintiff's products liability action theories arising under Transaction One survive summary judgment except for its marketing defect claim. Summary judgment in favor of Dealers is **GRANTED** as to Plaintiff's marketing defect products liability claim. All other relief sought by Dealers pursuant to the Motion is **DENIED**.

So ORDERED and SIGNED this 15th day of December, 2023.

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE